Abbas Kazerounian, Esq. (SBN: 249203)
ak@kazlg.com
**KAZEROUNI LAW GROUP, APC**
245 Fischer Avenue, Suite D1
Costa Mesa, CA 92626
Telephone: 800.400.6808
Facsimile: 800.520.5523

Yana A. Hart, Esq. (SBN: 306499)
yana@kazlg.com
**KAZEROUNI LAW GROUP, APC**
2221 Camino Del Rio South, Suite 101
San Diego, CA 92108
Telephone: (619) 233-7770
Facsimile: (619) 297-1022

*Counsel for Plaintiff and the Putative Class*

# UNITED STATE DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID WEISBERG, on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BUSINESS CAPITAL CONSULTANTS CORP.,<br><br>Defendant. | Case No. 2:20-cv-02742<br><br>**CLASS ACTION COMPLAINT**<br><br>**VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C § 227**<br><br>**DEMAND FOR JURY TRIAL** |

## NATURE OF THIS ACTION

1. David Weisberg ("Weisberg" or "Plaintiff") individually and on behalf of the proposed Class defined below, brings this class action lawsuit for damages resulting from the unlawful actions of Defendant Business Capital Consultants Corp.. ("BCC Corp." or "Defendant"). BCC Corp. negligently, knowingly, and/or willfully placed unsolicited automated text messages to Plaintiff's cellular phone in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (the "TCPA"). Plaintiff alleges as follows upon personal knowledge as to himself and his own experiences and, as to all other matters, upon information and belief including due investigation conducted by his attorneys.

2. This case is brought to enforce the consumer privacy provisions afforded by the TCPA, a federal law that was designed to curtail abusive telemarketing practices precisely like those described herein.

3. BCC Corp. has violated 47 U.S.C. § 227(b)(1)(A)(iii) and 47 C.F.R. § 64.1200(a)(2) by using an automatic telephone dialing system ("ATDS") to bombard consumers' mobile phones with non-emergency advertising and marketing text messages without prior express written consent.

## JURISDICTION AND VENUE

4. This Court has federal question subject matter jurisdiction over this class action lawsuit pursuant to 28 U.S.C. § 1331 as Plaintiff alleges violations of a federal statute, the TCPA.

5. This Court has personal jurisdiction over BCC Corp. because, during the relevant time period, BCC Corp. delivered unsolicited marketing messages to California consumers. BCC Corp.'s marketing campaign, which caused harm to purported class members across the country, emanated from Medford, New York. As such, BCC Corp. has purposefully availed itself of the laws and markets of the State of California and this District by intentionally sending text messages to the individuals located in California with the California area codes.

6. Venue is proper in the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1391(b)(2) because Defendant's unlawful conduct resulted in harm of California consumers, including Plaintiff, and thus, substantial part of events transpired in this District, where Plaintiff resides.

## PARTIES

7. Plaintiff is an individual who, at all relevant times, resided in Los Angeles California.

8. Defendant BCC Corp., Inc. is a corporation organized under the laws of the State of New York, with its principal place of business in Medford, New York.

9. BCC Corp. is a financial company offering "Loan/Credit Solutions" to businesses.[1]

10. BCC Corp. is, and at all times mentioned herein was a "person," as defined by 47 U.S.C. § 153(39).

11. In order to procure business leads, BCC Corp. conducts a marketing campaign by placing impersonal text messages to consumers' cellular telephone numbers.

## TCPA BACKGROUND

12. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.

13. The TCPA was designed to prevent calls and text messages like the one described within this complaint, and to protect the privacy of citizens like Plaintiff. "Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

14. In enacting the TCPA, Congress intended to give consumers a choice as to how creditors and telemarketers may call them, and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden

---

[1] https://www.businesscapitalconsultants.com (last accessed on March 22, 2020).

on the consumer." TCPA, Pub.L. No. 102-243, § 11. Toward this end, Congress found that:

> Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

*Id*. at § 12; *see also, Martin v. Leading Edge Recovery Solutions, LLC*, 2012 WL 3292838, at *4 (N.D. Ill. Aug. 10, 2012) (citing Congressional finding on TCPA's purpose).

15. Congress also specifically found that "the evidence presented to the Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call […]." *Id*. At §§ 12-13; *see also, Mims*, 132 S. Ct. at 744.

16. As Judge Easterbrook of the Seventh Circuit explained in a TCPA case regarding calls to a non-debtor similar to this one:

> The Telephone Consumer Protection Act […] is well known for its provisions limiting junk-fax transmissions. A less litigated part of the Act curtails the use of automated dialers and prerecorded messages to cell phones, whose subscribers often are billed by the minute as soon as the call is answered – and routing a call to voicemail counts as answering the call. An automated call to a landline phone can be an annoyance; an automated call to a cell phone adds expense to annoyance.

*Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012).

17. The TCPA makes it "unlawful for any person within the United States . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call . . . ." 47 U.S.C. § 227(b)(1)(A)(iii).

18. Text messages are calls and are subject to the TCPA. *See, e.g.*, *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 666 (2016); *Satterfield v. Simon & Schuster, Inc.,* 569 F.3d 946, 954 (9th Cir. 2009).

19. 47 C.F.R. § 64.1200(a)(2) additionally states, with respect to advertisement and telemarketing calls—of which Defendant's text to Plaintiff is—that "[n]o person or entity may . . . [i]nitiate or cause to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to any of the lines or telephone numbers described in paragraphs (a)(1)(i) through (iii) of this section, other than a call made with the prior express written consent of the called party . . . ."

20. 47 C.F.R. § 64.1200(f)(8) defines "prior express written consent" as "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered."

21. To state a claim for a violation of the TCPA, a plaintiff must only show that he or she received a call made using an ATDS or featuring a prerecorded voice; consent is an affirmative defense to liability under the TCPA. *See Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1042 (9th Cir. 2012) (finding Defendant "did not show a single instance where express consent was given before the call was placed.")

22. Further, the Federal Communications Commission has issued rulings and clarified that for marketing telephone calls and texts, a company must obtain a clear, unambiguous, and conspicuous written disclosure. *See* 2012 FCC Order, 27 FCC Rcd. at 1839. ("[R]equiring prior written consent will better protect consumer privacy because such consent requires conspicuous action by the consumer — providing permission in writing — to authorize autodialed or prerecorded telemarketing calls....").

23. The TCPA provides for damages in the amount of $500 for each negligent violation and $1,500 for each knowing violation. *See* 47 U.S.C. § 227(b)(3).

## FACTUAL ALLEGATIONS

24. Plaintiff is, and has been at all times relevant to this action, the regular and sole user of his cellular telephone number—(310) 776-XXXX.

25. On or about April 23, 2019, at approximately 12:02 PM, BCC Corp. sent the following unsolicited text to Plaintiff's cellular telephone number from the short code 48782:



26. The April 24, 2019 unsolicited text was impersonal, and sent from the short code via a text blast to numerous consumers.

27. The text message depicted that it was sent on behalf of the Defendant.

28. At no time prior to this text message did Plaintiff provide Defendant with his prior express written consent to receive automated text messages sent via an automatic telephone dialing system.

29. In fact, Plaintiff registered his cellular number with the National Do Not Call Registry prior to the call at issue.

30. The marketing text message sent by BCC Corp. consisted of an impersonal scripted message, intended to advertise Defendant's funding abilities and services.

31. At no time prior to the unwelcomed text message did Plaintiff solicit Defendant's business; in fact, prior to the unsolicited text message, Plaintiff was not aware of Defendant's existence.

32. Unsurprisingly, Plaintiff's privacy was wrongfully invaded, and Plaintiff has become understandably aggravated with having to deal with the annoyance and frustration of the unsolicited and unwanted text, forcing him to divert his attention from his other activities, and work.

33. The telephone system BCC Corp. used to deliver this unsolicited and unwelcomed text message constitutes an ATDS as defined by 47 U.S.C. § 227(a)(1).

34. Upon information and good faith belief, and in light of the nature and character of the text message at issue—standardized, impersonal, and consistent in structure and format—the advertisement and marketing text messages at issue were sent by using "equipment which has the capacity—(1) to store numbers to be called or (2) to produce numbers to be called, using a random or sequential number generator—and to dial such numbers automatically (even if the system must be turned on or triggered by a person)." *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1053 (9th Cir. 2018).

35. Upon information and belief, no human directed any single text message to Plaintiff's number.

36. In addition, upon information and belief the hardware and software combination utilized by BCC Corp. has the capacity to store and dial sequentially generated numbers, randomly generated numbers or numbers from a database of numbers.

37. BCC Corp. did not have Plaintiff's prior express consent to place automated text message to Plaintiff on his cellular telephone.

38. Receipt of Defendant's unauthorized text message caused Plaintiff frustration, annoyance, aggravation, and invasion of Plaintiff's privacy.

39. Defendant did not place the unsolicited text message for an emergency purpose.

40. Through the aforementioned conduct, Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii) and 227(c).

## STANDING

41. Standing is proper under Article III of the Constitution of the United States of America because Plaintiff's claims state: (a) a valid injury in fact; (b) which is traceable to the conduct of Defendant; and (c) is likely to be redressed by a favorable judicial decision. *See*, *Spokeo, Inc. v. Robins,* 136 S.Ct. 1540, 1547 (2016)*; Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

**The "Injury In Fact" Prong**

42. Plaintiff's injury in fact must be both "concrete" and "particularized" in order to satisfy the requirements of Article III of the Constitution, as articulated in *Spokeo*. *Spokeo*, 136 S.Ct. at 1547.

43. For an injury to be "concrete" it must be a de facto injury, meaning that it actually exists. *Soppet v. Enhanced Recovery Co.*, LLC, 679 F.3d 637, 638 (7th Cir. 2012). In this case, Defendant sent an unsolicited telemarketing text message to Plaintiff's cellular telephone, using an ATDS. Such unsolicited text messages are a nuisance, and constitute an invasion of privacy. All three of these injuries are concrete and de facto.

44. For an injury to be "particularized" means that the injury must "affect the Plaintiff in a personal and individual way." *Spokeo, Inc.*, 136 S.Ct. at 1543. In this case, Defendant invaded Plaintiff's privacy and peace by sending an unwelcomed marketing text message to Plaintiff's cellular telephone, and did this with the use of an ATDS, despite Plaintiff's registry of his telephone number with the National Do Not Call Registry. Furthermore, Plaintiff was distracted and annoyed by having to take time, answering the

marketing call. All of these injuries are particularized and specific to Plaintiff, and will be the same injuries suffered by each member of the putative class.

### The "Traceable to the Conduct of Defendant" Prong

45. The second prong required to establish standing at the pleadings phase is that Plaintiff must allege facts to show that its injuries are traceable to the conduct of Defendant.

46. The above text message was directly and explicitly linked to Defendant because it listed Defendant's name and solicited Plaintiff's business with Defendant. Therefore, Plaintiff has illustrated facts that show that his injuries are traceable to the conduct of Defendant.

### The "Injury is Likely to be Redressed by a Favorable Judicial Opinion" Prong

47. The third prong to establish standing at the pleadings phase requires Plaintiff to allege facts to show that the injury is likely to be redressed by a favorable judicial opinion.

48. In the present case, Plaintiff's Prayers for Relief include a request for damages for each text message made by Defendant, as authorized by statute in 47 U.S.C. § 227. The statutory damages were set by Congress and specifically redress the financial damages suffered by Plaintiff and the members of the putative class.

49. Because all standing requirements of Article III of the U.S. Constitution have been met, Plaintiff has standing to sue Defendant on the stated claims.

### CLASS ACTION ALLEGATIONS

50. Plaintiff brings this action under Federal Rule of Civil Procedure 23, and as a representative of the following classes (collectively referred to as "Class"):

> **ATDS Class:**
> All persons within the United States who received any text message from Defendant, not sent for emergency purposes, to said person's cellular telephone made through the use of any automatic telephone dialing system within the four years prior to the filing of this Complaint.

**DNC Class:**
All persons within the United States who, within the four years prior to the filing of this Complaint, received a text message to said person's cellular telephone number within any 12-month period, by or on behalf of the same entity, without their prior express consent, while listed on the national Do Not Call Registry.

51. Excluded from the class are Defendant, its officers and directors, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendant has or had a controlling interest.

52. Plaintiff reserves the right to redefine the class and to add more subclasses as appropriate based on discovery and specific theories of liability.

53. <u>Numerosity</u>: Upon information and belief, the members of the class are so numerous that joinder of all of them is impracticable.

54. The exact number of the members of the class is unknown to Plaintiff at this time, and can (and will) be determined through appropriate discovery. However, given that, on information and belief, Defendant delivered text messages to thousands of class members nationwide during the class period, it is reasonable to presume that the members of the Class are so numerous that joinder of all members is impracticable. The disposition of the claims in a class action will provide substantial benefits to the parties and the Court.

55. <u>Ascertainability</u>: The members of the class are ascertainable because the class is defined by reference to objective criteria.

56. In addition, the members of the class are identifiable in that, upon information and belief, their cellular telephone numbers, names and addresses can be identified in business records maintained by Defendant and by third parties.

57. <u>Typicality</u>: Plaintiff's claims are typical of the claims of the members of the class. Plaintiff has had to suffer the burden of receiving text messages to his cellular telephone from an ATDS. Thus his injuries are typical to Class Members. As it did for all members of the class, Defendant used an ATDS to deliver a text message to Plaintiff's cellular telephone number.

58. Plaintiff's claims, and the claims of the members of the class, originate from the same conduct, practice and procedure on the part of Defendant.

59. Plaintiff's claims are based on the same theories, as are the claims of the members of the class.

60. Plaintiff and Class Members were harmed by the acts of Defendant in at least the following ways: Defendant harassed Plaintiff and Class Members by illegally texting their cellular phones using an ATDS. Plaintiff and the Class were damaged thereby.

61. <u>Adequacy</u>: Plaintiff is qualified to, and will fairly and adequately protect the interests of the members of the class with whom he is similarly situated, as demonstrated herein. Plaintiff acknowledges that he has an obligation to make known to the Court any relationships, conflicts, or differences with any Class Member.

62. Plaintiff's interests in this matter are not directly or irrevocably antagonistic to the interests of the members of the class.

63. Plaintiff will vigorously pursue the claims of the members of the class.

64. Plaintiff has retained counsel experienced and competent in class action litigation. Plaintiff's attorneys, the proposed class counsel, are versed in the rules governing class action discovery, certification, and settlement. In addition, the proposed class counsel is experienced in handling clams involving consumer actions and violations of the TCPA.

65. Plaintiff's counsel will vigorously pursue this matter.

66. Plaintiff's counsel will assert, protect and otherwise represent the members of the class.

67. Plaintiff has incurred, and throughout the duration of this action, will continue to incur costs and attorneys' fees that have been, are, and will be, necessarily expended for the prosecution of this action for the substantial benefit of each Class Member.

68. <u>Predominance</u>: The questions of law and fact common to the members of the class predominate over questions that may affect individual members of the class. The elements of the legal claims brought by Plaintiff and Class Members are capable of proof at trial through evidence that is common to the Class rather than individual to its members.

69. <u>Commonality</u>: There are common questions of law and fact as to all members of the Class, including but not limited to the following:

    a.    What is Defendant's conduct, pattern, and practice as it pertains to delivering advertisement and telemarketing text messages;

    b.    Whether, within the statutory period Plaintiff and Class Members registered their telephone numbers with the DNC Registry;

    b.    Whether, within the statutory period, Defendant used an ATDS as defined by the TCPA to send text messages to Class Members;

    c.    Whether Defendant's conduct violated the TCPA;

    d.    Whether Defendant should be enjoined from engaging in such conduct in the future; and

    e.    The availability of statutory penalties.

70. <u>Superiority</u>: A class action is superior to all other available methods for the fair and efficient adjudication of this matter because:

- If brought and prosecuted individually, the claims of the members of the class would require proof of the same material and substantive facts.
- The pursuit of separate actions by individual members of the class would, as a practical matter, be dispositive of the interests of other members of the class, and could substantially impair or impede their ability to protect their interests.
- The pursuit of separate actions by individual members of the class could create a risk of inconsistent or varying adjudications, which might establish incompatible standards of conduct for Defendant.
- These varying adjudications and incompatible standards of conduct, in connection with presentation of the same essential facts, proof, and legal theories, could also create and allow the existence of inconsistent and incompatible rights within the class.
- The damages suffered by each individual member of the class may be relatively modest, thus, the expense and burden to litigate each of their claims

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

- individually make it difficult for the members of the class to redress the wrongs done to them.
- Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law.
- The pursuit of Plaintiff's claims, and the claims of the members of the class, in one forum will achieve efficiency and promote judicial economy.
- There will be little difficulty in the management of this action as a class action.

71. Defendant has acted or refused to act on grounds generally applicable to the members of the class, making final declaratory or injunctive relief appropriate.

72. Plaintiff and the Class Members have all suffered and will continue to suffer harm and damages as a result of Defendant's unlawful conduct.

73. This suit seeks only damages and injunctive relief for recovery of economic injury on behalf of Class Members and it expressly is not intended to request any recovery for personal injury and claims related thereto.

## First Cause of Action

## Negligent Violations of The TCPA

## 47 U.S.C. § 227 Et Seq.

74. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

75. The foregoing acts and omissions of Defendant constitute numerous and multiple negligent violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227, *et seq*.

76. As a result of Defendant's negligent violations of 47 U.S.C. § 227, *et seq*., Plaintiff and the Class are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

77. Plaintiff and the Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## Second Cause of Action

## Knowing and/or Willful Violations of the TCPA

## 47 U.S.C. § 227 Et Seq.

78. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

79. The foregoing acts and omissions of Defendant constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227, *et seq*.

80. As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227, *et seq*., Plaintiff and the Class are entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

81. Plaintiff and the Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## Third Cause of Action

## 47 U.S.C. § 227(c) (Do Not Call Registry)

82. Plaintiff re-alleges and incorporates the above paragraphs as if fully set forth herein.

83. Plaintiff and members of the DNC Class received at least one text message within a 12-month period, by or on behalf of Defendant, for the express purpose of marketing Defendant's goods and/or services without their written prior express consent.

84. Defendant's text message caused Plaintiff and members of the DNC Class actual harm including, but not limited to, invasion of their personal privacy, aggravation, nuisance and disruption in their daily lives, reduction in cellular telephone battery life, data, and loss of use of their cellular telephones.

85. As a result of the aforementioned violations of the TCPA, Plaintiff and the DNC Class are entitled to an award of up to $1,500.00 for each call in violation of the TCPA pursuant to 47 U.S.C. § 227(c)(5).

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

86. Additionally, Plaintiff and members of the DNC Class are entitled to and seek injunctive relief prohibiting such future conduct.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff and the Class members pray for judgment as follows against Defendant:

- Certify the Class(es) as requested herein;
- Appoint Plaintiff to serve as the Class Representative in this matter;
- Appoint Plaintiff's Counsel as Class Counsel in this matter;
- Provide such further relief as may be just and proper.
- In addition, Plaintiff and the Class members pray for further judgment as follows against Defendant:

### First Cause of Action
### Negligent Violation of
### The TCPA, 47 U.S.C. § 227 Et Seq.

87. As a result of Defendant's negligent violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for himself and each Class member $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B);

88. Pursuant to 47 U.S.C. § 227(b)(3)(A), injunctive relief prohibiting such conduct in the future;

89. Prejudgment interest; and

90. Any other relief the Court may deem just and proper.

### Second Cause of Action
### Knowing/Willful Violation of
### The TCPA, 47 U.S.C. § 227 Et Seq.

91. As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for himself and each Class member $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B);

92. Pursuant to 47 U.S.C. § 227(b)(3)(A), injunctive relief prohibiting such conduct in the future;

93. Prejudgment interest; and,

94. Any other relief the Court may deem just and proper.

## Third Cause of Action

## Knowing/Willful Violation of

## The TCPA, 47 U.S.C. § 227(c)

95. As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for himself and each Class member $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(c)(5);

96. Injunctive relief prohibiting such conduct in the future;

97. Prejudgment interest; and,

98. Any other relief the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all triable issues.

Date: March 24, 2020                    **KAZEROUNI LAW GROUP, APC**

                                        By: s/ Abbas Kazerounian
                                            Abbas Kazerounian, Esq.
                                            ak@kazlg.com
                                            *Attorneys for Plaintiff and the Putative Class*